UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EDWIN J. JONES,

                Plaintiff,

       -against-

106th RESCUE WING, LOGISTICS READINESS
SQUADRON, NEW YORK AIR NATIONAL
GUARD, STATE OF NEW YORK,

                Defendants.
----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 11-3528

(Wexler, J.)

FILED
US IN CLERK'S OFFICE
DISTRICT COURT E.D.N.Y
★ MAR 2 0 2012 ★
LONG ISLAND OFFICE

APPEARANCES:

    LEONARD ZACK & ASSOCIATES
    BY: LEONARD ZACK, ESQ.
    405 Park Avenue, 10th Floor
    New York, New York 10022
    Attorneys for Plaintiff

    ERIC T. SCHNEIDERMAN, ESQ.
    ATTORNEY GENERAL OF THE STATE OF NEW YORK
    BY: SUSAN M. CONNOLLY, ESQ.
    300 Motor Parkway - Suite 205
    Hauppauge, New York 11788
    Attorneys for Defendants

WEXLER, District Judge

Plaintiff Edwin J. Jones ("Plaintiff"), brings this action alleging wrongdoing in connection with his former employment with the Defendant 106th Rescue Wing of the New York Air National Guard (the "106th"). Also named as a Defendant is the State of New York. This matter was commenced in the Supreme Court of the State of New York, County of Suffolk, as a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules ("Article 78"), and was thereafter removed to this court. The basis for removal is Defendants' position that

1

Plaintiff's claim, which is predicated upon the personnel action of the New York Air National Guard, is inherently military and therefore non-justiciable. That basis of federal jurisdiction is, among others, a ground for Defendants' present motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint. For the reasons set forth below, the court agrees that this matter is non-justiciable and the complaint is therefore dismissed.

## BACKGROUND

I. Facts

A. Plaintiff's Employment With the Air National Guard

Plaintiff is a resident of Suffolk County who enlisted in the Air Force in 1981. He left the Air Force in 1988, and thereafter joined the New York Air National Guard (the "NYANG"). The highest level position held by Plaintiff at the NYANG was that of Master Sargent with the 106th. From 1990 through 2006, Plaintiff served in various positions alleged to involve the supervision of three areas, and the management of fifteen subordinates. Plaintiff's tour with the Active Guard Reserve of the NYANG was renewed from May 2003 through July 2006.

Plaintiff's state court Petition[1] refers to three promotions that he applied for, but did not receive in 2005. To explain the denial of those promotions, Plaintiff refers to the acts of his supervisor, Lt. Col. Killian ("Killian"). Specifically, Plaintiff alleges that Killian acted wrongfully when he promoted less qualified individuals to the positions Plaintiff sought. Plaintiff alleges that Killian's negative animus stemmed from his knowledge of Plaintiff's written support of James MacQuill ("MacQuill"), a fellow member of the 106th. That support came in the form of a November 29, 2005, letter of recommendation written by Plaintiff. Plaintiff alleges that after

---

[1] Plaintiff's state court proceeding was commence by way of an Article 78 Petition, rather than a complaint.

Killian became of aware of Plaintiff's support of MacQuill, Killian informed Plaintiff that his active guard reserve ("AGR") would not be renewed on June 30, 2006, but would instead be curtailed by fifteen days. Additionally, Plaintiff was transferred to a different section of his base. Plaintiff alleges that Killian's transfer decision was motivated by retaliation rather than the needs of the unit.

Plaintiff asserts that he again applied for, but was denied promotions in 2006. Thereafter, in March of 2006, Plaintiff suffered an injury and severely fractured his ankle.[2] That injury required surgery and a period of recuperation. Consequently, Plaintiff was placed on convalescent leave until the end of his AGR tour. Plaintiff asserts that during his leave Killian continued to retaliate against Plaintiff by making repeated and unnecessary requests for medical documentation. On June 22, 2006, Killian told Plaintiff that his AGR tour would terminate on June 15, 2006. Plaintiff alleges that Killian's decision to terminate Plaintiff's tour was in violation of regulations that prohibited such termination while Plaintiff's was out on disability leave.

Plaintiff was cleared to return to work in August of 2006, and began to collect unemployment insurance benefits. Thereafter, in November of 2006, Plaintiff obtained a position with Globecomm, a civilian company. Plaintiff alleges that the salary he received at Globecomm was insufficient to pay his bills.

At the same time, the NYANG continued to evaluate Plaintiff's physical condition. In April of 2008, the Informal Physical Evaluation Board (the "Board") determined that Plaintiff

---

[2] Plaintiff refers to the injury as having been incurred in the line of duty. Documents before the court indicate that the injury was suffered while Plaintiff was moving furniture in his home. The circumstances surrounding the injury and not necessary to the determination of this motion.

could return to work without restriction. Plaintiff disagreed with this finding and sought a hearing. In September of 2008, the Board found that Plaintiff was physically unfit to reasonably perform his duties, due to his physical disability. Thereafter, the Secretary of the Air Force directed that Plaintiff be honorably discharged with severance pay.

B. <u>Administrative Air Force Proceedings</u>

Following his October 24, 2008 discharge, Plaintiff sent a letter to the New York State Inspector General, alleging unfair treatment in the military. Plaintiff complained therein of unfair treatment by Killian, which affected Plaintiff "career-wise, financially and mentally." Such treatment was alleged to have deprived Plaintiff "of the opportunity for advancement, employment, or just plain fair treatment." Approximately one month after his complaint to the Inspector General, Robert Bolger, Assistant Inspector General of the New York Air National Guard ("Bolger"), sent a letter to Plaintiff responding to his complaint. Plaintiff was informed that the non-renewal decision as to Plaintiff's tour of duty was within the authority of the local command "to meet the needs of the mission." Bolger also informed Plaintiff that the final date of his tour of duty was off by fifteen days and advised Plaintiff of the procedure to facilitate a correction request. It was also noted that Plaintiff's tour of duty should not have been terminated while his medical condition was under review. Bolger also advised Plaintiff as to the procedure for facilitating review of this decision.

Plaintiff thereafter formally requested a correction of his military records to reflect: (1) that he continued on active duty until October 2008 – the date of conclusion of his disability review; (2) that the disability rating with respect to Plaintiff's injury be increased from 20% to 30% or 40%; (3) that Plaintiff's separation date from active duty be corrected to reflect a date of June 30, 2006, rather than June 15, 2006, and (4) that Plaintiff's military records be changed to

4

reflect certain awards and his participation in certain operations during the course of his career.

A hearing on Plaintiff's request for correction of his records was held before the Air Force Board for Correction on Military Records (the "Board"). On May 26, 2010, the Board issued its findings. In addition to noting the requests set forth above, the Board's findings noted Plaintiff's contention that he was denied employment opportunities "for discriminatory reasons or out of retaliation." While the Board recommended denial of Plaintiff's disability rating beyond the 20% level, it found sufficient evidence to support Plaintiff's contention that his tour of duty end date should have been June 30, rather than June 15, 2006. Finally, the Board recommended that Plaintiff's military records be corrected to show that Plaintiff was not released from active duty in June of 2006, but that he continued to serve on active duty with the 106th until October 27, 2008, when he was finally transferred to inactive status. No recommendations were made with respect to Plaintiff's claims of discriminatory treatment in the terms of his employment at the 106th. Plaintiff's military record was thereafter corrected to conform with the changes recommend by the Board.

II.     Prior Proceedings

    A.     The Article 78 Petition

Plaintiff's Article 78 Petition notes the previously corrected error of discharging Plaintiff while he was on medical leave. Additionally, the Petition continues to assert Plaintiff's employment rights which were not granted by the Board. Specifically, the Petition asserts that Killian's employment decisions with respect to Plaintiff were arbitrary and capricious and made in violation of his "duty to make discretionary decisions in the best interest" of the 106th. Those decisions are alleged to have been made on the basis of "personal bias, retaliation, and unlawful discrimination," and are alleged to have prevented Plaintiff from obtaining promotions to which

5

he was entitled and qualified. The relief sought in the Petition and before this court is re-enlistment in the 106th as well as compensatory and punitive damages, including back pay and benefits.

B. Removal and the Motion to Dismiss

As noted, the State Court proceeding commenced by the Petition was removed by Defendants to this court. Presently before the court is Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that: (1) Plaintiff raises only military personnel issues that are non-justiciable; (2) Defendants are immune from suit under the doctrine announced in Feres v. United States, 340 U.S. 135 (1950); (3) Plaintiff fails to state a claim, and (4) to the extent that any claim is stated, it is time-barred.

After setting forth applicable legal principles the court will turn to the merits of the motion.

## DISCUSSION

I. Legal Principles

A. Standards on a Motion to Dismiss

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 127 S. Ct. at 1974, see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

While heightened factual pleading is not the new order of the day, Twombly holds that a

"formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Twombly, 127 S. Ct. at 1959. In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. A pleading that does nothing more that recite facts and bare legal conclusions is insufficient to "unlock the doors of discovery . . . and only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing the action. See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Watts, 2007 WL 1651852 *2.

B.     Justiciability

The rule prohibiting the judiciary from rendering decisions that are constitutionally committed to a different branch of government is grounded in the doctrine of Separation of Powers. That doctrine prohibits the judiciary from ruling as to non-justiciable political questions. See Baker v. Carr, 369 U.S. 186 (1962). This concept has been applied to prevent the judiciary from interfering with decisions regarding internal personnel matters of the military, which includes entities such as the Defendant NYANG. E.g., Gilligan v. Morgan, 413 U.S. 1

7

(1973); Dibble v. Fenimore, 339 F.3d 120 (2d Cir. 2003). Applying the rule, the Supreme Court has noted that the judicial branch lacks the power to make decisions as to the "composition, training, equipping and control of a military force." Gilligan, 413 U.S. at 10; see, e.g., Chappell v. Wallace, 462 U.S. 296 (1983). This doctrine renders many claims of employment discrimination brought by service personnel non-justiciable.

In Chappell for example, the Court held that the judiciary lacked the power to adjudicate the claim of five enlisted men who alleged that they were given undesirable duties and low performance evaluations on account of their race. Chappell, 462 U.S. at 297. Noting, as it had in the past, the "peculiar and special relationship of the soldier to his superiors," and that "judges are not given the task of running the Army," the Court held that the enlisted military personnel could not maintain their lawsuit alleging a Constitutional violation. Chappell, 462 U.S. at 300, 305 (citations omitted). Following Chappell, the Second Circuit has ruled specifically that lawsuits brought by members of the military alleging violations of 42 U.S.C. §1983 are barred by the doctrine of intramilitary immunity. Jones v. New York State Division of Military and Naval Affairs, 166 F.3d 45, 51 (2d Cir. 1999); see also Overton v. New York State Div. of Military and Naval Affairs, 373 F.3d 83, 88-89 (2d. Cir. 2004)( Feres doctrine bars members of the military from bringing Title VII employment discrimination suits challenging military employment decisions); Roper v. Department of Army, 832 F.2d 247, 248 (2d Cir. 1987) (same).

The prohibition on judicial review of military decisions is not absolute. Thus, a court may entertain a lawsuit alleging that the military has failed to follow its own mandatory regulations. Jones v. New York State Division of Military and Naval Affairs, 166 F.3d 45, 52 (2d Cir. 1999). When determining whether a lawsuit is justiciable, the court does not focus on the nature of the relief sought. The issue is not whether Plaintiff seeks purely equitable relief or

8

money damages. Instead, the issue is whether the challenge is to the constitutionality of a rule of "general applicability," or to a "discrete military personnel decision." Dibble, 339 F.3d at 127 (citations omitted). The latter, which "involve[s] a fact-specific inquiry into an area affecting military order and discipline," is non-justiciable. Id. at 128. Such considerations make courts reluctant to become involved in decisions regarding military personnel decisions. E.g., United States v. Stanley, 483 U.S. 669, 682 (1987); Brown v. Glines, 444 U.S. 348, 360 (1980).

II.     Plaintiff Raises Only Non-Justiciable Claims

The court has reviewed Plaintiff's Petition, as well as a complaint filed in this court.[3] Upon such review, the court holds that this matter must be dismissed. This is not a case where the complaint alleges that the military has failed to follow mandatory regulations. Instead, Plaintiff here complains of discrete decisions regarding his particular placement and promotions. Specifically, Plaintiff asserts that Killian was motivated by ill will and legally improper motives when transferring Plaintiff and denying his requests for promotions.

The military personnel decisions raise by Plaintiff involve precisely the type of individualized questions that are prohibited from judicial review under the precedent discussed above. Accordingly, the court dismisses Plaintiff's complaint in its entirety. Accord Figueroa v. Maguire, 831 N.Y.S.2d 248, 250 (2d Dep't. 2007) (dismissing claim arising out of termination of tour of New York Air National Guard member as raising non-justiciable issues).

---

[3] After removal Plaintiff filed a complaint in this court. Plaintiff sought no leave to file such a pleading and Defendants have therefore properly objected to that filing. The court has reviewed the complaint, however, and notes that it raises no issues outside of those raised in the Petition. Accordingly, even consideration of this unauthorized pleading does not save this matter from dismissal.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. The Clerk of the Court is directed to terminate the motion appearing at docket numbers 23 and 26, and to thereafter close the file in this case.

SO ORDERED.

/s/ LEONARD D. WEXLER
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
April 25, 2012

10